UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SCOTTSDALE INSURANCE COMPANY, an Ohio Corporation,

Plaintiff,

v.

LEE THORNTON (dba Malo Store), individually, JULIE THORNTON, GLENN THORNTON, individually and as Co-Administrator for the Estate of E.T., and SEASON HAMILTON, individually and as Co-Administrator for the Estate of E.T., and DOES 1 through 5,

Defendants/Third Party Plaintiffs,

v.

METROPOLITAN GROUP PROPERTY AND CASUALTY INSURANCE COMPANY dba Met Life Auto & Home, a Rhode Island Corporation doing business as an insurer in the state of Washington,

Third Party Defendant.

NO. 2:17-CV-00077-JLQ

MEMORANDUM OPINION AND ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

## I. Introduction

BEFORE THE COURT is: (1) Third-Party Defendant Metropolitan Group Property and Casualty Insurance Company's Motion for Summary Judgment (ECF No. 44); (2) Plaintiff Scottsdale's Motion for Summary Judgment (ECF No. 48); (3) Defendants

ORDER - 1

1  Season Hamilton, Glenn Thornton, and Estate of E.T.'s Motion for Summary Judgment (ECF
2  No. 49); and (4) Defendant Lee and Julie Thornton's Amended Motion for Summary
3  Judgment (ECF No. 53). Plaintiff and all Defendants filed Response briefs to Plaintiff and
4  Defendants' Motions. (ECF No. 59); (ECF No. 63); (ECF No. 67). Plaintiff and all
5  Defendants filed Reply briefs. (ECF No. 68); (ECF No. 69); (ECF No. 70). Plaintiff took no
6  position on Met Life's Motion (ECF No. 58), and Defendants stated they had no objection to
7  that Motion (ECF No. 73), (ECF No. 74). All Motions were submitted for decision without
8  oral argument. This Order memorializes the court's ruling on the Motions.

The MetLife Policy provided coverage only for the Toyota Highlander. Metlife asserts its Policy provides no coverage for the U-Haul truck or the U-Haul operation. (ECF No. 44 at 5). The parties do not oppose MetLife's Motion. The court finds there is no genuine issue of fact that the MetLife Policy does not provide coverage for the U-Haul accident and summary judgment is appropriate.

## II. Factual Background

At all material times, Defendant Lee Thornton owned and operated the Malo Store, located at 17510 N. Highway 21, Malo, Washington 99150. (ECF No. 64 at ¶2). He had run the Malo Store since September 2003. (ECF No. 64 at ¶3). As part of the Malo Store operation, Lee Thornton was, since January, 2003, a registered agent of U-Haul to rent, receive, and display U-Haul trucks. (ECF No. 64 at ¶4).

Plaintiff Scottsdale Insurance Company ("Plaintiff" or "Scottsdale") issued Commercial General Liability policy No. CPS2343072 ("Scottsdale Policy") to the Malo Store which had a policy period of October 14, 2015, to October 14, 2016. (ECF No. 51-1 at 4). The Malo Store application listed "grocery" and "gas pump" in the schedule of hazards (ECF No. 51-2 at 2). The application did not disclose or seek insurance coverage for a truck rental business. *See* (ECF No. 51-2). The application answered "N[o]" when asked "DO YOU RENT OR LOAN EQUIPMENT TO OTHERS" and "ANY PARKING FACILITIES

ORDER - 2

OWNED/RENTED." (ECF No. 51-2 at 4). The application was signed by Lee Thornton. (ECF No. 51-2 at 5).

The Scottsdale Policy excludes claims for "'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." (ECF No. 51-1 at 15, § I(A)(2)(g)). This exclusion does not apply to "[p]arking an 'auto' on, or on the ways next to, premises you own or rent, provided the 'auto' is not owned by or rented or loaned to you or the insured." (ECF No. 51-1 at 15, § I(A)(2)(g)(3)). The Scottsdale Policy defines "auto" as:

> a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
> b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. However, "auto" does not include "mobile equipment".

(ECF No. 51-1 at 24, § V(2)).

On December 7, 2015, the Malo Store entered into its then current Agreement with U-Haul Company of Inland Northwest. (ECF No. 66 at 1). Pursuant to the Agreement, the U-Haul equipment is "consigned to [Malo Store] and title to the Equipment shall remain in U-Haul and/or one of its affiliates at all times." (ECF No. 66 at 1). The Store's obligations to U-Haul included "prominently displaying the Equipment, distributing the Equipment... [and] dispatching and receiving the equipment." (ECF No. 66 at 5). The Store was also obligated to complete "all relevant inspections, inquiries and paperwork, checking and correcting the tire pressure, fluid levels, non-functioning lights, cleanliness and visible damage... [and] perform repair work designated as minor maintenance on the Equipment." (ECF No. 66 at 5). U-Haul required the Malo Store to "account for all odometer mileage accumulated on the Equipment" and the Malo Store paid "for any mileage not properly accounted for on a valid rental contract." (ECF No. 66 at 6).

ORDER - 3

Third Party Defendant Metropolitan Group Property and Casualty Insurance Company ("MetLife") issued Auto Policy No. 161072257-0 ("MetLife Policy") to Defendant Julie Thornton with effective dates June 1, 2016 to December 1, 2016. (ECF No. 46-1 at 3). Julie Thornton is the wife of Lee Thornton (collectively "Thornton Defendants"). (ECF No. 1 at ¶3); (ECF No. 18 at ¶3). The MetLife Policy lists Julie and Lee Thornton as household drivers. (ECF No. 46-1 at 4). The only insured vehicle on the MetLife Policy is a 2009 Toyota Highlander. (ECF No. 46-1 at 3).

On December 5, 2016, Glenn Thornton and Season Hamilton, individually and as co-administrators of the estate of E.T. (collectively "Hamilton Defendants" in this matter) filed a First Amended Complaint for Wrongful Death, Pre-Death Pain and Suffering, Loss of Parent/Child Consortium in case number 16-2-00083-9 in the Ferry County Superior Court against, *inter alia*, Lee and Julie Thornton and the Malo Store. (ECF No. 51-4). On May 23, 2017, the Hamilton Defendants filed a Second Amended Complaint in the Ferry County court. (ECF No. 51-5); *see Thornton, et al. v. Thornton, et al.*, No. 16-2-00083-9, Dkt. #30 (Ferry County Superior Court) ("Ferry County lawsuit"). The underlying facts as alleged in the Ferry County lawsuit, are as follows.

On June 9, 2016, customer Mike Seifried returned a rented U-Haul truck to the Malo Store. (ECF No. 64 at ¶¶9, 12); (ECF No. 51-5 at ¶2.9). Seifried parked the truck in front of the Malo Store, entered the Store, returned the keys, and asked for his deposit. (ECF No. 64 at ¶¶9-11). Lee Thornton returned the deposit, took Seifried's paperwork, and set it on the counter because Lee Thornton was assisting other customers. (ECF No. 64 at ¶¶11-12). Seifried left the Store. (ECF No. 64 at ¶13). Thereafter, Lee Thornton left the store to park the returned U-Haul truck in the designated display area. (ECF No. 64 at ¶15). When Lee Thornton went outside, his two year old grandson, E.T., followed him. (ECF No. 51-5 at ¶2.17). E.T. was accidently knocked to the ground and run over by the U-Haul truck driven by Lee Thornton, causing E.T.'s death. (ECF No. 51-5 at ¶¶2.21, 2.22).

ORDER - 4

The Ferry County lawsuit alleges Lee Thornton was negligent in operating the U-Haul truck and failed to take precautions to prevent two-year old E.T. from following him outside. (ECF No. 51-5 at § III). The Thornton Defendants tendered the Ferry County lawsuit to Scottsdale. (ECF No. 1 at ¶26); (ECF No. 18 at ¶26). Scottsdale agreed to defend the Thornton Defendants against the Ferry County lawsuit, subject to a reservation of rights. (ECF No. 51-6); (ECF No. 51-7).

On February 21, 2017, Scottsdale filed the Complaint in this court seeking declaratory relief regarding its duty to defend the Thorntons in the Ferry County lawsuit. *See* (ECF No. 1). On July 24, August 1, and August 2, 2017, the parties filed their competing Motions for Summary Judgment. *See* (ECF No. 44); (ECF No. 48); (ECF No. 49); (ECF No. 53). Response and Reply briefs were filed in September, 2017. No party requested oral argument on the Motions.

### III. Discussion

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the nonmoving party has the burden of proof at trial, the moving party need only point out there is an absence of evidence to

support the nonmoving party's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the opposing party must come forward with specific facts showing there is a genuine issue for trial. (*Id.*).

Although a summary judgment motion is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations and quotations omitted).

In an insurance coverage dispute, "[t]he insured bears the burden of showing that coverage exists; the insurer that an exclusion applies." *Mutual of Enumclaw Ins. Co. v. T & G Const., Inc.*, 165 Wn.2d 255, 268 (2008). When addressing an insurance contract, "interpretation and construction are separate endeavors" for the court. *International Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 281 (2013). "During interpretation, a court's primary goal is to ascertain the parties' intent at the time they executed the contract." (*Id.* at 282). "In construing the language of an insurance policy, the entire contract must be construed together so as to give force and effect to each clause." *Boeing Co. v. Aetna Cas. and Sur. Co.*, 113 Wn.2d 869, 876 (1990). "Undefined terms in an insurance contract must be given their 'plain, ordinary, and popular' meaning." (*Id.* at 877) (quoting *Farmers Ins. Co. v. Miller*, 87 Wn.2d 70, 73 (1976)). "To determine the ordinary meaning of an undefined term, [Washington] courts look to standard English language dictionaries." (*Id.*). Unless it is "clear that *both* parties to the contract intended that the language have a legal technical meaning... the words will be given their plain, ordinary meaning." (*Id.* at 882) (emphasis in original).

ORDER - 6

"An ambiguity exists in an insurance contract if the language is fairly susceptible to two different reasonable interpretations." *Weyerheauser Co. v. Aetna Cas. and Sur. Co.*, 123 Wn.2d 891, 897 (1994). In determining whether ambiguity exists, the court must "look at the language according to the way it would be read by the average insurance purchaser." *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 424 (1997). When the court finds ambiguity in an insurance contract, the "meaning and construction most favorable to the insured *must be applied*, even though the insurer may have intended another meaning." *Thompson v. Ezzell*, 61 Wn.2d 685, 688 (1963) (emphasis in original) (quoting *Selective Logging Co. v. General Cas. Co. of America*, 49 Wn.2d 347, 351 (1956)).

"After interpreting an insurance policy, the court must construe it, i.e., determine its legal effect." *International Marine*, 179 Wn.2d at 288. "If a court is unable to resolve an ambiguity through interpretation, it must construe the ambiguity in favor of the insured." (*Id.*); *see also*, *McDonald v. State Farm Fire and Cas. Co.*, 119 Wn.2d 724, 733 (1992) ("if an insurance policy's exclusionary language is ambiguous, the legal effect of such ambiguity is to find the exclusionary language ineffective."). "[I]f insurers want exclusions upheld, they have the burden of drafting them in 'clear' and 'unequivocal' terms." *International Marine*, 179 Wn.2d at 288 (quoting *Am. Star Ins. Co. v. Grice*, 121 Wn.2d 869, 875 (1993), *supplemented by* 123 Wn.2d 131 (1994)).

"[C]overage exclusions are contrary to the fundamental purpose of insurance and will not be extended beyond their clear and unequivocal language." *City of Bremerton v . Harbor Ins. Co.*, 92 Wn. App. 17, 21 (1998). However, "a strict application should not trump the plain, clear language of an exclusion such that a strained or forced construction results." *Quadrant Corp. v. American States Ins. Co.*, 154 Wn.2d 165, 172 (2005). The rule resolving ambiguities strictly against the insurer "applies with added force to exclusions limiting coverage." *City of Bremerton*, 92 Wn. App. at 22.

ORDER - 7

**A. Efficient Proximate Cause**

"The efficient proximate cause rules states that where a peril specifically insured against sets other causes into motion which, in an unbroken sequence, produce the result for which recovery is sought, the loss is covered, even though other events within the chain causation are excluded from coverage." *McDonald*, 119 Wn.2d at 731. The efficient proximate cause rule applies "after (1) a determination of which single act or event is the efficient proximate cause of the loss and (2) a determination that the efficient proximate cause of the loss is a covered peril." (*Id.*).

The Hamilton claimants argue the efficient proximate rule applies because there are "at least two separate and distinct acts of negligence involving overlapping damages." (ECF No. 49 at 5). The Hamiltons assert Lee Thornton was negligent in his supervision of E.T. which allowed E.T. to leave the store and walk to the parking lot. (ECF No. 49 at 5-6). Lee Thornton's alleged negligent supervision exposed E.T. to injury that "could have occurred anywhere at any time throughout the business day, and in many ways and places." (ECF No. 49 at 6). The Hamiltons also argue the Scottsdale Policy covered the parking of vehicles at the Malo Store's gas station and, by extension, applied to the parking of the U-Haul truck. (ECF No. 70 at 3).

Scottsdale argues the efficient proximate cause rule does not apply because there was no covered occurrence. (ECF No. 67 at 7). Scottsdale asserts the only occurrence is the U-Haul accident, which is not covered under the Scottsdale Policy because it falls under the "auto exclusion." (ECF No. 67 at 7). Additionally, Scottsdale argues the Scottsdale Policy does not cover any alleged negligence in babysitting E.T. (ECF No. 67 at 8).

The named insured in the Scottsdale Policy is the Malo Store. (ECF No. 51-1 at 4). To the extent Lee Thornton is considered an insured because the Store is a sole proprietorship, Lee Thornton and his wife are insureds "only with respect to the conduct of a business of which you are the sole owner." (ECF No. 51-1 at 20, § II(1)(a)). There are no facts that

ORDER - 8

reasonably infer Lee Thornton was babysitting E.T. in furtherance of the Malo Store. The only alleged act undertaken for the Store was moving the U-Haul truck. Whether it could have involved any other person being injured is immaterial to the efficient proximate cause rule.

Even if Lee Thornton was negligent in babysitting E.T., the Scottsdale Policy does not cover that alleged negligence because it was unrelated to the operation of the Malo Store. Accordingly, the only occurrence that could provide coverage is Lee Thornton's use of the returned U-Haul, addressed below.

**B.     Auto Exclusion**

The Scottsdale Policy excludes "'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." (ECF No. 51-1 at 15, § I(A)(2)(g)). Scottsdale argues the U-Haul accident falls within this exclusion because the truck was an "auto" as defined by the Scottsdale Policy. (ECF No. 48 at 5). Additionally, Scottsdale asserts "there can be no reasonable debate that Lee Thornton was alleged to have been using the U-HAUL truck at the time of the accident." (ECF No. 48 at 5). Scottsdale also argues "the accident alleged clearly arises out of the use of an auto." (ECF No. 48 at 5).

The Thornton Defendants do not contest the auto exclusion issue, instead focusing on whether the "parking exception" applies. (ECF No. 63 at 2-3). The Hamiltons appear to take the same position regarding the "auto exclusion." *See* (ECF No. 59 at 2) (stating the issue "is whether Scottsdale's 'parking exception' affords or excludes coverage while Mr. Thornton was operating the Malo Store and parking a returned U-Haul on the business premises.").

The court finds, as an initial matter, the U-Haul accident falls within the "auto exclusion." The language is clear and unambiguous. The accident caused bodily injury arising out of Lee Thornton's operation of the U-Haul truck, an "auto" under the Scottsdale Policy. Accordingly, the court must determine whether there is coverage pursuant to the "parking exception."

ORDER - 9

**C.     Parking Exception**

The "auto exclusion" does not apply to "[p]arking an 'auto' on, or on the ways next to, premises you own or rent, **provided the 'auto' is not owned by or rented or loaned to you or the insured**." (ECF No. 51-1 at 15, § I(A)(2)(g)(3)) (emphasis added).

It is undisputed the U-Haul truck was not owned by or rented to Lee Thornton or the Malo Store. Scottsdale argues the "parking exception" does not apply because U-Haul "loaned" the truck to the Malo Store. (ECF No. 48 at 6-9). The Hamilton Defendants argue the U-Haul truck was not "loaned" to the Malo Store or Lee Thornton because he did not have permission to use it for personal purposes. (ECF No. 59 at 6-9). Additionally, the Hamilton Defendants assert interpreting "loan" to apply to consignments would make the "parking exception" illusory. (ECF No. 59 at 9-10). The Thornton Defendants assert the truck was consigned, not loaned to Lee Thornton. (ECF No. 63 at 3-7). The parties cite cases from other jurisdictions in support of their positions.

The Scottsdale Policy does not define "loaned." The Washington Supreme Court has held "[t]he word 'loan' imports an advancement of money or other personal property to a person, under a contract or stipulation, express or implied, whereby the person to whom the advancement is made binds himself to repay it at some future time, together with such other sum as may be agreed upon for the use of the money or thing advanced." *Port of Longview, Cowlitz County v. Taxpayers of Port of Longview, Cowlitz County*, 85 Wn.2d 216, 225 (1974) (quotation marks and citation omitted).

The agreement between U-Haul and the Malo Store established the Store "as an agent for the [U-Haul] Equipment for and on behalf of U-haul." (ECF No. 66 at 1). The agreement further stated the U-Haul equipment was "consigned" to the Malo Store. (ECF No. 66 at 1). The U-Haul agreement does not define "consigned" nor has any published Washington case.

Black's Law Dictionary defines "consignment" as "[t]he act of cosigning goods for custody or sale" and "[a] quantity of goods that are sent somewhere, esp. in a single shipment, usu. to be sold." Black's Law Dictionary (10th ed. 2014). It also provides another definition:

> a transaction in which a person delivers goods to a merchant for the purpose of sale, and (1) the merchant deals in goods of that kind under a name other than the name of the person making delivery, is not an auctioneer, and is not generally known by its creditors to be substantially engaged in selling others' goods, (2) with respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery, (3) the goods are not consumer goods before delivery, and (4) the transaction does not create a security interest that secures an obligation.

(*Id.*) (citing UCC § 9-102(a)(20)); *see also*, RCW 62A.9A-102(a)(20).

It is clear the Malo Store's possession of U-Haul trucks were consignments in light of the clear and unambiguous language of the U-Haul agreement. The issue is whether the Scottsdale Policy's use of the word "loaned" includes consignments within its scope. The parties did not cite any case addressing this precise issue. However, those cases cited in the parties' briefs provide insight into the scope of "loaned" within an insurance policy.

The Florida Court of Appeals held the use of the term "loan" in an auto exclusion policy "is broad enough" to include bailments. *Fireman's Fund Ins. Co. v. Dollar Systems, Inc.*, 699 So.2d 1028, 1031 (Fla. Dist. Ct. App. 1997). Another court noted "courts have embraced a broad definition of the term loaned" in insurance policies. *Penn-America Ins. Co. v. South Florida Preparatory Christian Academy*, No. 12-60359-CIV-WILLIAMS, 2014 WL 12489671 at *4 n.4 (S.D. Fla. Aug. 12, 2014) (citing cases and holding "a vehicle is loaned when it is given to another for his use"). The Supreme Court of Alabama held "that where nothing more than an employee's use of his own vehicle in furtherance of his employer's business has been shown, a loan of the vehicle to the employer has not been established." *Generali US Branch v. The Boyd School, Inc.*, 887 So.2d 212, 217 (Ala. 2004). In reaching this conclusion, the Alabama Supreme Court relied on an Alabama Court of Civil Appeals'

definition of "loaned to." (*Id*. at 216-17) (quoting *U.S. Fidelity & Guaranty Co. v. Perry*, 361 So.2d 594, 597 (Ala. Civ. App. 1978).

A Maine federal court found "a vehicle is loaned when the auto is employed for the purpose of the borrower." *Middlesex Mut. Assur. Co. v. Fish*, 738 F.Supp.2d 124, 138 (D. Maine 2010). In *Fish*, the court discussed the difference between "rented" and "loaned," noting "'[l]oaned' must have an independent meaning from 'rented' or it would be mere surplusage." (*Id*.) (quotation marks and citation omitted). The federal district court concluded "'loaned' must mean something less than a formal or informal lease of the vehicle and something more than its mere use." (*Id*.). The district court also observed "other courts embrace a broad definition when interpreting similar CGL contracts." (*Id*.) (citing *EZ Rolloffs, LLC v. The Hermitage Ins. Co.*, 2005 WL 984347 at \*\*4-5 (D. Minn. April 27, 2005)).

Some cases cited by Defendants are distinguishable because they did not interpret the ordinary meaning of "loan" in an insurance contract. *See Zurich General Accident & Liability Ins. Co., Limited, of Zurich, Switzerland v. Safe-T-Kros Drug Co.*, 170 N.E. 351, 352 (Ind. App. 1930) (discussing the legal constructs of "loan" and "consigned" in applying a policy that turned on whether the insured would be legally liable for the stolen items). Other cases relied on by Defendants support the court's conclusion that the ordinary meaning of "loaned" does not require personal use. *See EZ Rolloffs, LLC v. Hermitage Ins. Co.*, No. 03-C-5564 JMR/FLN, 2005 WL 984347 at \*4 (D. Minn. April 27, 2005) (applying the dictionary definition of "loan" to exclude insurance coverage where a vehicle was granted temporary permission for use in the furtherance of the employer's business); *Nissan North America, Inc. v. Haislip*, 155 S.W.3d 104, 108 (Tenn. Ct. App. 2004) (addressing whether personal property was "leased property" for the purposes of taxes and defining a bailment for mutual benefit as one where "it appears that both parties to the contract receive a benefit from the transaction") (quotation marks and citation omitted). *Fisher v. Tyler*, 382 A.2d 338 (Md. Ct. App. 1978) is factually

ORDER - 12

distinguishable because in this matter, Lee Thornton exercised custody and control of the U-Haul truck under a formal arrangement with U-Haul whereby the Malo Store rented U-Haul property for profit.

The above cases establish the use of the word "loaned" is generally construed broadly in an insurance policy's auto exclusion to include many different types of formal and informal arrangements. The Thornton Defendants assert a "loan" must allow for personal use, and they contend the fact Lee Thornton did not have permission to use the U-Haul trucks for personal purposes shows they were not "loaned" to him. (ECF No. 63 at 9-10). However, the case law discussed above does not support such a restrictive reading. Only the *Penn-America* case includes "use" as part of "loaned" but does not require ***personal*** use. *See Penn-America*, 2014 WL 12489671 at *4 n.4 ("a vehicle is loaned when it is given to another for his use"). Additionally, the use of the U-Haul was in furtherance of U-Haul's interest, consistent with the definition set forth in *Generali. See Generali*, 887 So.2d at 218. Even if the court defined loan to include for the use of the borrower, the U-Haul truck was given to the Malo Store for the business purposes of the Store.

Any reasonable interpretation of "loaned" in the Scottsdale Policy included U-Haul trucks consigned or returned to the Malo Store. The Store did not have any ownership interest in the truck. The trucks were in the Store's possession pursuant to a longstanding formal arrangement. For all intents and purposes, the truck was "loaned" to the Store, whether from U-Haul or the customer. The fact insurance exclusions are to be narrowly interpreted does not change this result. *See Penn-America*, 2014 WL 12489671 at *3 (holding any doubts about the duty to defend "must be resolved in favor of the insured" and adopting a broad definition of "loaned" in an auto exclusion). The language is clear and unambiguous. Defendants have not explained how the foregoing conclusion allegedly renders the "parking exception" illusory. The court need not engage in hypothetical speculation when the facts before the court clearly fall within the reasonable scope of "loaned."

ORDER - 13

The fact the Scottsdale Policy lists the gas station and convenience store as hazards but omits the rental operation further supports the conclusion the Store did not intend to obtain liability coverage for the U-Haul trucks through the Scottsdale Policy. Had Lee Thornton intended for the Scottsdale Policy to cover the U-Haul business, it should have been listed therein or included in response to the questions on the application form which Lee Thornton signed. The only reasonable inference from its omission is that the U-Haul operation was not intended to be covered by the Scottsdale Policy. The fact parking customers' vehicles was reasonably foreseeable as part of the gas station operation does not change this conclusion because parking the U-Haul was not part of the gas station or car repair operation. Additionally, even if, as the Hamilton Defendants argue, Scottsdale had notice of the U-Haul operation, this does not change the clear and unambiguous language of the Policy which did not cover the U-Haul operation. For all of the above reasons, the "parking exception" does not apply because the U-Haul truck was "loaned" to the Malo Store and/or Lee Thornton.

### IV.    Conclusion

The court finds the "auto exclusion" in the Scottsdale Policy applies to the U-Haul accident at issue. The court further finds the "parking exception" does not apply because the U-Haul was "loaned" to the Malo Store and/or Lee Thornton within the ordinary meaning of the word. The court also finds the efficient proximate cause rule is inapplicable because negligent supervision of E.T. is not covered under the Scottsdale Policy. Accordingly, the Scottsdale Policy provides no coverage for the U-Haul accident causing the tragic death of E.T. Because the parties do not contest MetLife's Motion for Summary Judgment, that Motion is Granted.

**IT IS HEREBY ORDERED**:

1. Third-Party Defendant Metropolitan Group Property and Casualty Insurance Company's Motion for Summary Judgment (ECF No. 44) and Scottsdale's Motion for Summary Judgment (ECF No. 48) are **GRANTED** as set forth herein.

2. Defendants Season Hamilton, Glenn Thornton, and Estate of E.T.'s Motion for Summary Judgment (ECF No. 49); and Defendant Lee and Julie Thornton's Amended Motion for Summary Judgment (ECF No. 53) are **DENIED** as set forth herein.

3. The Clerk shall enter Judgment in favor of Plaintiff Scottsdale Insurance Company and Third Party Defendant Metropolitan Group Property and Casualty Insurance Company granting their Motions for Summary Judgment.

**IT IS SO ORDERED**. The Clerk is hereby directed to enter this Order and Judgment, furnish copies to counsel, and close this file.

Dated January 11, 2018.

<u>s/ Justin L. Quackenbush</u>
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE